# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SANDRA FAYE TAYLOR,

          Plaintiff,

vs.

SOCIAL SECURITY ADMINISTRATION,

          Defendant.

Case No. 2:12-cv-01692-GMN-GWF

**FINDING AND RECOMMENDATION**

This matter comes before the Court on Plaintiff Sandra Taylor's ("Plaintiff") complaint for judicial review of administrative action by the acting Commissioner of Social Security denying her claim for disability benefits under Title II of the Social Security Act. Specifically, Plaintiff seeks reversal of the Administrative Law Judge's ("ALJ") decision dated May 20, 2011 denying her claim for disability benefits.

The Court granted Plaintiff's Application to Proceed in Forma Pauperis on October 26, 2012. Plaintiff's Complaint (#3) was on filed on the same day. Defendant's Answer (#15) was filed on March 7, 2013, along with a Notice of Filing the Administrative Record ("AR") (#16). Plaintiff filed his Motion for Remand (Doc. #19) on April 12, 2013. Defendant filed her Response to Plaintiff's Motion (Doc. #22) on June 26, 2013.

## BACKGROUND

### A.     Procedural History

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplement security income on May 12, 2009. AR 132-35. Plaintiff alleges a disability onset date of August 31, 2007. *Id*. The Commissioner denied Plaintiff's claims at the initial determination, and denied reconsideration of that denial on February 19, 2010. AR 86. Plaintiff requested an appeal

before an ALJ on April 22, 2010. AR 95. The ALJ conducted a hearing on May 10, 2011. AR 50. The ALJ issued an unfavorable decision on May 20, 2011. AR 23. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a report of findings and recommendations under 28 U.S.C. §§ 636 (b)(1)(B) and (C).

### B.     Factual History

Plaintiff was born on March 2, 1960. AR 202. In the last 15 years, Plaintiff was first a hotel maid and then a fast food worker. AR 77. Within her fast food job, she was a cashier and stock clerk. AR 78. The main injury giving rise to Plaintiff's alleged disability occurred on August 30, 2007, and Plaintiff initially claimed a disability onset date of August 31, 2007 after the associated surgery. AR 214, AR 132. The ALJ noted at the hearing that independent work Plaintiff performed in 2009 may have constituted substantial gainful activity, however, and Plaintiff amended the onset date to June 1, 2009. AR 55. As the bases for her application for disability benefits, Plaintiff complained of leg pain following a left tibia fracture surgery and hypertension.

#### i.     *Treatment*

Plaintiff was admitted to Sunrise Hospital on August 30, 2007 after slipping on bacon grease at her job at a fast food restaurant. AR 214. X-rays revealed Plaintiff suffered a distal and third diaphyseal comminuted tibia fracture with associated proximal fibular neck fracture. *Id.* Dr. Hugh Selznick, MD operated on Plaintiff the same day as admission, and performed intramedullary nailing to stabilize the left tibia fracture, and applied a short leg splint. AR 216. The surgery was completed with no complications. AR 217. She was discharged from Sunrise on September 2, 2007 with diagnoses of left tibia fibula fracture status post intramedullary nail and systemic hypertension. AR 218. At a followup appointment on October 24, 2007, Dr. Selznick noted that views of the left tibia/fibula showed healing and stable position of the fixation hardware. AR 206. At a followup appointment on November 14, 2007, Dr. Selznick noted "excellent alignment and position," but "still not a lot of healing." AR 198. On March, 2008, Dr. Selznick noted that despite his prescription for same, physical therapy "has not been authorized for unclear reasons." AR 193. Dr. Selznick noted on April 7, 2008 that although Plaintiff showed ongoing deconditioning and slight antalgic gait secondary to weakness, Plaintiff "certainly [could] return to the cashier type position" after a strengthening program and

"wean[ing] herself from her cane." AR 192-93. After a year gap, Plaintiff was prescribed medication by Dr. Abhinav Sinha, MD several times to treat complaints of "constant leg pain" between April 3, 2009 and November 5, 2010. AR 282-300.

### ii. *Medical Opinions*

Robert Wolinsky, PT of Kelly Hawkins Physical Therapy Works completed a functional capacity evaluation on September 17, 2008 using an electronic strength testing system. AR 224. The tests indicated Plaintiff could lift 13 pounds, carry 50 pounds occasionally, sit and bend frequently, stand and walk occasionally, and could not squat, kneel, or crawl. AR 231. Dr. Wolinsky concluded that Plaintiff fit the physical demand category of "sedentary-light," and opined that Plaintiff could not return to her job as a fast food worker, which is "light work." AR 230.

Independent medical examiner Jerrold Sherman, MD conducted a consultative examination of Plaintiff on October 22, 2009. AR 241. Dr. Sherman noted that at the time of his examination, Plaintiff had not received treatment for her left leg since completing three weeks of physical therapy in February 2008. *Id.* Dr. Sherman recorded Plaintiff's complaints as constant aching pain over the anterior aspect of the knee with normal but painful motion. *Id.* Dr. Sherman also noted that Plaintiff carried a cane in his office, but concluded it is not necessary and reported that Plaintiff did not use it during her visit. AR 242. X-rays revealed tibia/fibula fractures in good alignment with rod and fixation screws within the tibia, and Plaintiff could flex her left knee 0 to 140 degrees without pain. AR 243. Dr. Sherman opined that Plaintiff is able to sit, stand, and walk for six hours during an 8-hour work day and does not require a cane, brace, or assistive device to ambulate. AR 244. Dr. Sherman further opined that Plaintiff can lift 25 pounds frequently and 50 pounds occasionally, and has no restrictions regarding squatting, kneeling, pushing, pulling, or bending forward at the waist. *Id.* Dr. Sherman also imposed no environmental restrictions on Plaintiff's functional capacity. AR 245.

State examiner Mayenne Karelitz, MD completed a residual functional capacity assessment on February 18, 2010. AR 273. Dr. Karelitz opined that Plaintiff can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for six hours in an 8-hour workday, sit for six hours in an 8-hour workday, and push and/or pull without limitation. AR 267. Dr. Karelitz further opined that Plaintiff could occasionally climb stairs, balance, stoop, kneel, and crawl, and never climb

ladders/ropes/scaffolds or crouch. AR 268. Finally, Dr. Karelitz opined Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, etc. and even moderate exposure to extreme hot or cold and hazards like machinery or heights. AR 270. Because her assessment differed from Dr. Sherman's, Dr. Karelitz noted that for "the benefit of the doubt, [she] decreased work capacity to light work considering [Plaintiff's] use of a cane, although [she] did not see where it was prescribed." AR 272.

Treating physician Dr. Sinha completed a residual functional capacity assessment on December 7, 2010. AR 281. Dr. Sinha opined that Plaintiff's level of pain would constantly interfere with her attention and concentration as needed to perform even simple work, and that Plaintiff was incapable of tolerating even a "low stress" job. AR 278. Dr. Sinha further opined that Plaintiff can walk less than one block without severe pain, sit for 10 minutes before needing to stand or otherwise adjust, stand for 15 minutes before needing to sit or otherwise adjust, stand/walk less than two hours in an 8-hour workday, and that Plaintiff requires a cane. *Id.* Dr. Sinha concluded that Plaintiff would need a job that permits shifting posture at will and that permits unscheduled breaks. AR 279. Dr. Sinha opined that Plaintiff can rarely lift less than 10 pounds, and can never twist, stoop, crouch, or climb stairs. AR 280. Finally, Dr. Sinha opined that Plaintiff would have "good days and bad days," and would miss more than four days of work per month. AR 281.

      iii.    *Administrative Hearing*

At the hearing, Plaintiff testified that she can stand "maybe to 15 to 20 minutes at a time," after which her leg will "swell[] up," and that she can walk 30 feet before she has to sit down. AR 72-73. Plaintiff testified that she makes use of her cane every day. AR 65. Plaintiff stated that she can sit for 10 to 15 minutes before she would have difficulty standing up and walking again. Plaintiff estimated she could lift a maximum of 15 pounds. Finally, Plaintiff testified that Dr. Sinha, her current treating physician, has referred her to an orthopedic surgeon. AR 61. AR 74. As regards her hypertension, Plaintiff stated that her medicine frequently causes her to be dehydrated. AR 63.

Vocational Expert Robin Generaux ("Generaux") characterized Plaintiff's past relevant work as guest room attendant, fast food worker, cashier, and stock clerk. AR 77-78. The ALJ inquired of Ms. Generaux if there was work at the medium exertional level for an individual with the following

restrictions:

> Occasional climbing of ramps or stairs. No ladders, ropes, or scaffolds. Occasional balancing, stooping, no kneeling, occasional crouching, no crawling. In addition to that, avoidance of concentrated exposure to extreme heat or cold. And avoidance of concentrated exposure to hazardous machinery, operational control of moving machinery, and unprotected heights.

AR 78-79. Ms. Generaux responded that no medium work accommodates those restrictions, but that cashiering and fast food, both light work, could. AR 79. Ms. Generaux further testified that the additional light jobs of security guard, order clerk, interviewer, and information clerk would accommodate the hypothetical restrictions. AR 80-83.

    **C.    ALJ's Decision**

The ALJ issued his decision on May 20, 2011. The ALJ found that Plaintiff was not disabled, because Plaintiff possessed sufficient RFC to perform her past relevant work. In reaching this conclusion, the ALJ followed the five-step process set forth in 20 C.F.R. § 404.1520(a)-(f). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2009. Second, the ALJ found Plaintiff had a severe impairment in the form of a fractured tibia. Third, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appx. 1. Before reaching step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b). At step four, the ALJ determined Plaintiff is capable of performing her past relevant work as a cashier. Finally, the ALJ made an alternative finding at step five that Plaintiff is capable of performing other light work.

In determining that Plaintiff could perform light work, the ALJ considered the medical opinions and Plaintiff's testimony, assigning them varying degrees of weight. The ALJ afforded Mr. Wolinsky's opinion that Plaintiff could not return to work little weight, because as a physical therapist he is not an "acceptable medical source" under 20 C.F.R. §§ 404.1513(a), 416.913(a). To the extent that Mr. Wolinsky's opinion is entitled to limited weight under SSR 06-03p, the ALJ did not afford it any weight because it was "not supported by the record as a whole." AR 32. As regards Dr. Sherman's assessment, the ALJ found it "somewhat overestimat[ed] [Plaintiff's] residual functional capacity," and

5

afforded it diminished weight because it was "inconsistent with the provider evidence in the record, the state agency's residual functional capacity assessment and the physical therapy notes." AR 33. The ALJ afforded state examiner Dr. Karelitz's opinion "significant weight because the record as a whole supported [it]." *Id.*

The ALJ discounted treating physician Dr. Sinha's opinion for a number of reasons. First, the ALJ found "the course of treatment pursued by the doctor was not consistent with what one might expect if [Plaintiff] were truly disabled[.]" AR 31. Second, the ALJ found Dr. Sinha relied heavily on Plaintiff's subjective reports of her symptoms and limitations, which he uncritically accepted as true. *Id.* Next, the ALJ noted the gaps in Plaintiff's treatment with Dr. Sinha, most notably the year between Plaintiff's first and second visits. AR 32. Finally, the ALJ found that Dr. Sinha's opinion was without substantial support from the other evidence in the record, and accordingly assigned it little weight. *Id.*

The ALJ also rejected portions of Plaintiff's hearing testimony on the basis of credibility. The ALJ noted the record reflects Plaintiff's symptoms may have been present "at approximately the same level of severity prior to the alleged onset date" because the injury occurred in 2007, but did not prevent her from earning wages in 2009. AR 30. The ALJ also found the record did not reflect a medical reason for the alleged onset date of June 1, 2009; there was no evidence of hospitalizations, increase in treatment, or worsening of symptoms. AR 31. "Treatment notes," the ALJ continued, "showed that her physicians found no basis for rendering other than conservative treatment, and that she was mostly visiting them for medication refills." *Id.* Additionally, the ALJ took issue with the conflicting information regarding Plaintiff's use of her cane. Although Plaintiff testified that she uses her cane on a regular basis, "a consultative examiner noted that she did not use her cane during the examination" and opined that "the cane was not medically necessary." *Id.* The ALJ found that the "inconsistencies suggest that the information provided by [Plaintiff] might not have been entirely reliable." *Id.*

Having afforded the opinions and testimony the weight he deemed appropriate, the ALJ found that Plaintiff had the RFC to perform light work. AR 29. In making that finding, the ALJ stated that he "considered all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* Based on Generaux's testimony that Plaintiff's previous cashier job, both as Plaintiff described it and as it is described in the Dictionary of

Occupational Titles, is a light unskilled job, the ALJ determined at step four that Plaintiff could perform her previous job and was not disabled. AR 33.

## DISCUSSION

### I. Standard of Review

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin* v. *Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

. . .

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.     Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

(a) he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

(b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Batson*, 157 F.3d at 721.

## III.     Analysis of the Plaintiff's Alleged Disability

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the

Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* § 404.1520(a). Plaintiff now asserts the ALJ improperly rejected Dr. Sinha's opinion and Plaintiff's hearing testimony.

    **A.    Whether the ALJ's Finding that Plaintiff was Able to Perform Light Work Was Supported by Substantial Evidence in the Record.**

          **i.    *The ALJ's rejection of Dr. Sinha's opinion***

In *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001), the Ninth Circuit set forth the rules regarding the weight that is to be accorded to different types of medical opinions:

> Title II's implementing regulations distinguish among the opinions of three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see* 20 C.F.R. §404.1527(d). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Lester*, 81 F.3d at 830. 20 C.F.R. § 404.1527(d). In addition, the regulations give more weight to opinions that are explained than to those that are not, *see* 20 C.F.R. § 404.1527(d)(3), and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists.

"Although the contrary opinion of a non-examining medical expert does not alone constitute a specific legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence that is consistent with other independent evidence in the record." *Tonapetyan v. Halter*, 242

1  F.3d 1144, 1149 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).  The
2  ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical
3  evidence.  *Magallanes*, 881 F.2d at 750.  An ALJ must provide "clear and convincing" reasons for
4  rejecting the uncontradicted opinion of an examining physician.  *Gallant v. Heckler*, 753 F.2d 1450,
5  1454 (9th Cir. 1984).  And like the opinion of a treating doctor, "the opinion of an examining doctor,
6  even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are
7  supported by substantial evidence in the record."  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.
8  1995).  In determining whether an ALJ provided a legitimate reason for rejecting an opinion, though,
9  courts are not deprived from their faculties "for drawing specific and legitimate inferences from the
10 ALJ's opinion."  *Magallanes,* 881 F.2d at 755.

11  Plaintiff argues that the ALJ did not articulate legitimate reasons based on substantial evidence
12 to reject Dr. Sinha's opinions.  The Court finds, however, that the ALJ provided ample reasons to
13 support his rejection of Dr. Sinha's RFC assessment.  As detailed above, the ALJ found that Dr. Sinha's
14 opinion did not have substantial support from the record.  For example, Dr. Selznick, who operated on
15 Plaintiff, released her back to work with no significant restrictions.  AR 192.  In September and October
16 of 2007, Dr. Selznick reported Plaintiff was doing well with no complaints of pain, and that she had
17 "excellent alignment and position" of her tibial shaft and fracture.  AR 199-200; 222.  Furthermore,
18 both consultative examiners opined that Plaintiff could perform at least light work.  AR 241-44; 266-
19 73.  This lack of support in the balance of the record combined with the aforementioned treatment gaps,
20 both articulated by the ALJ, constitute specific and legitimate reasons for rejecting Dr. Sinha's
21 opinions.

22                 **ii.**        ***The ALJ's rejection of Plaintiff's testimony***

23  Plaintiff also asserts the ALJ failed to provide sufficient reasons for finding that Plaintiff's
24 statements and testimony regarding the severity of her symptoms were not credible.  Plaintiff argues
25 that the ALJ's credibility analysis and findings do not satisfy the standard under Ninth Circuit case law.
26 In *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (2009), the court states that under Ninth
27 Circuit case law,
28 . . .

> [w]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

*Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F. 3d 595, 599 ( 9th Cir. 1999) (citations omitted).

*Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) further states:

> In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain. *See Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir.1991). The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone. *See* SSR 96–7p (1996). In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir.2001). Additionally, Social Security Ruling 88–13 lists a number of factors the ALJ may consider:
>
>> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain; 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions); 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication; 4. Treatment, other than medication, for relief of pain; 5. Functional restrictions; and 6. The claimant's daily activities.
>
> *Bunnell,* 947 F.2d at 346 (quoting SSR 88–13 (1988)) (superceded by SSR 95–5p (1995)); *see also Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).
>
> Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting pain testimony must be clear and convincing. *See Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995). The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints —"[g]eneral findings are insufficient." *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks omitted).

In *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006), the ALJ found that the claimant's testimony was "not consistent with or supported by the overall medical evidence of record." The court stated that this finding

11

> [] is exactly the type we have previously recognized the regulations prohibit. *See* SSR 96–7p, 1996 WL 374186, at *1; *Light,* 119 F.3d at 792 ("In this case, the ALJ disbelieved Light because no objective medical evidence supported Light's testimony regarding the severity of subjective symptoms from which he suffers, particularly pain. An ALJ may not discredit a claimant's subjective testimony on that basis. To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony.").
>
> In addition, we note that the ALJ did not provide a "narrative discussion" that "contain[s] specific reasons for the finding ..., supported by the evidence in the case record"; nor was his brief notation "sufficiently specific to make clear ... the weight the adjudicator gave to the individual's statements and the reasons for that weight," as he is required to do. *See* SSR 96–7p, 1996 WL 374186, *2; SSR 96–8p, 1996 WL 374184, at *7. So, even if the ALJ had given facially legitimate reasons for his partial adverse credibility finding, the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy. While an ALJ may certainly find testimony not credible and disregard it as an "unsupported, self-serving statement," we cannot affirm such a determination unless it is supported by specific findings and reasoning. *See Flaten,* 44 F.3d at 1464.

Here, the ALJ stated that "after careful consideration of the evidence" he found "that [Plaintiff's] medically determinable impairment could reasonably be expected to cause the alleged symptoms." AR 30. The ALJ further stated that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her symptoms] are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." AR 30. Plaintiff is correct to say that this statement alone would not be sufficient to justify rejecting Plaintiff's testimony. Contrary to Plaintiff's assertions, however, the ALJ's analysis did not end there. The ALJ continued by stating "[Plaintiff] was less than fully credible." *Id.* The ALJ then explained that Plaintiff's testimony was contradicted by the following: the alleged onset date was amended because Plaintiff earned wages braiding hair after the injury occurred; the record does not reflect any reason for the alleged onset date; and the record contains conflicting information about Plaintiff's use of her cane. AR 31. The ALJ relied heavily on Plaintiff's post-injury hair braiding work, finding that "[t]he fact that the impairment did not prevent [Plaintiff] from working at that time [...] strongly suggests that it would not currently prevent all work." AR 30. These are the kinds of "ordinary techniques of credibility evaluation" contemplated by *Burch*, and constitute sufficiently clear and compelling reasons to discount Plaintiff's

subjective testimony.

## CONCLUSION

Having reviewed, considered and weighed both the evidence that supports and the evidence that detracts from the ALJ's conclusion, the Court finds the ALJ's decision that Plaintiff has the residual functional capacity to perform light work is supported by substantial evidence. The Court further finds that the ALJ articulated sufficient reasons to discount the testimony of treating physician Dr. Sinha. Finally, the Court finds that the ALJ articulated sufficiently compelling reasons to reject Plaintiff's testimony. Accordingly,

## RECOMMENDATIONS

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Remand (#19) be **denied**.

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-motion to Affirm be **granted**.

## NOTICE

Under Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. Appeals may been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). Failure to file objections within the specified time or failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 19th day of December, 2013.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge